[No. 8816.   *En Banc.*   September 20, 1910.]

THE STATE OF WASHINGTON, *on the Relation of the Great
Northern Railway Company, Plaintiff*, v. THE SUPERIOR
COURT FOR SPOKANE COUNTY, *Respondent*.[1]

STIPULATIONS — COMPROMISE AND SETTLEMENT — CONSTRUCTION —
EMINENT DOMAIN—PUBLIC USE—ESTOPPEL.   Where lands wanted for
railroad purposes are contracted to be sold to the railroad, in view
of condemnation proceedings being instituted, the contract is ma-
terial in such proceedings, being in effect a stipulation therein, and
the owners are estopped therein from asserting that the land was
not needed for a public use; and it is immaterial that the contract
of sale was conditional upon an adjudication of title in the owners
in a case then pending in court, where the owners obtained title by
compromising such pending litigation; a voluntary settlement being
as binding as a final judgment.

Writ of certiorari by both parties to review an order of
the superior court for Spokane county, Hinkle, J., entered
March 26, 1910, adjudging a public use and necessity as to
part of the lands, and refusing it in part, in proceedings to
condemn land for railway purposes, after a hearing on the
merits before the court without a jury.   Reversed on the rail-
road company's writ.

*L. E. Chester* and *J. J. Lavin* (*B. O. Graham*, of counsel),
for plaintiff.

*James Z. Moore* and *Richardson & Laughon*, for respond-
ent.

MOUNT, J.—Writ of review in condemnation proceedings.
The Great Northern Railway Company brought an action in
Spokane county to condemn a certain irregularly shaped
tract of land to be used at the junction of the main line of
that road with the Spokane, Portland & Seattle Railway.
The trial court, upon the hearing of the preliminary question
of the public use and necessity, adjudged the necessity and

[1]Reported in 110 Pac. 808.

public use of a portion of the land sought, but refused such order as to a strip of land sought for the purpose of changing the county road near the point of such junction. The Great Northern Railway Company sued out a writ of review to that part of the order refusing condemnation, and the owners of the land, J. Z. Moore and wife, sued out a writ of review to that portion of the order adjudging necessity where the land sought was in excess of one hundred feet in width on each side of the center line of the railway

The facts are as follows: Prior to the time the action was begun, James Z. Moore and wife and the Spokane Country Club each claimed to own a tract of land containing 18.5 acres, adjoining the Great Northern Railway on the south, at the point where the Spokane, Portland & Seattle connection joined the main line of the Great Northern Railway. The title of this land was in dispute, and Moore and wife had brought a suit against the Spokane Country Club to have the title thereto adjudged in themselves and quieted against the claims of the Spokane Country Club. That action was pending in the superior court of Spokane county. The Great Northern Railway Company desired a small, irregularly shaped tract of land, of about two and one-half acres, lying within the larger tract above mentioned. About two acres of the tract desired formed a triangularly shaped piece for the use of the track connection between the two railways, and about one-half an acre was a strip sixty feet wide, extending south from the triangular piece to be used as a county road, which the railway company desired to construct in order to avoid a dangerous crossing of the railroad at that point. The railroad company, in order to acquire this tract, entered into a contract with Moore and wife, as follows:

"This memorandum of agreement made this 29th day of January, 1909, by and between James Z. Moore and Anna K. Moore, husband and wife, parties of the first part, and the

Great Northern Railway Company, a corporation, party of the second part, witnesseth:

"That, whereas, an action is now pending in the superior court of Spokane county, state of Washington, between the parties of the first part and Spokane Country Club, involving the title to all that portion of the northwest quarter of section fourteen (14) in township twenty-five (25), north of range forty-two (42) east, lying east of the public highway, generally known as the Colville Road, and south of the right of way of the Great Northern Railway Company; and

"Whereas, the said parties of the second part desire to secure title to a portion of said above described tract of land;

"Now, therefore, this agreement witnesseth: That the said parties of the first part, for and in consideration of the sum of one dollar to them in hand paid, the receipt whereof is hereby acknowledged, agree that in case the title to said above described tract of land is decreed by final judgment of the superior court of Spokane county, Washington, to be in said parties of the first part, then and in that event, said first parties hereby agree to sell and convey to the said party of the second part, by warranty deed, free and clear of all claims, liens or encumbrances, and the said party of the second part hereby agrees to purchase from said parties of the first part, the following described tract of land, to wit: [then follows a description of the land sought to be obtained in this proceeding] for the sum of five thousand dollars ($5,000).

"And the said parties of the first part further agree that they will also convey to the said party of the second part, or to the county of Spokane, a tract or piece of land, 60 feet in width, for change of public highway over said northwest quarter of said quarter section fourteen (14). Said tract of land is shown colored red and marked 'Proposed Road Change' on blue print hereunto attached, and hereby made a part of this agreement; it being understood, however, between the parties hereto, that in the event the said first parties and the county commissioners of Spokane county, Washington, should desire to alter the route of the proposed public highway, then the said parties of the first part will donate free of cost to the said parties of the second part or to the county of Spokane, such route as may be mutually agreed upon between said first parties and said county commissioners.

"It is further understood and agreed between the parties hereto that in case said party of the second part deems it necessary to go upon said land at any time before a final determination of the controversy or suit now pending and hereinabove referred to, then and in that event it shall have the right, if it so elect, to enter condemnation proceedings against said first parties and against said Spokane Country Club, for the tract of land hereinabove described, and the said first parties hereby covenant and agree that in the event such suit is instituted by said second party, that the value of said land, together with the change of public highway, does not exceed five thousand dollars ($5,000), which amount they hereby agree to accept as liquidated damages in full payment for said tract of land, the right of way necessary for the change of public highway and all damages to the balance of the land owned by said first parties; which amount of five thousand dollars ($5,000) said first parties hereby agree to accept in full settlement of any and all claims they may have in and to the lands hereinabove described, and the second party agrees to pay said $5,000 to first parties. It is expressly understood that if it shall be adjudged and decreed that the Spokane Country Club and not the parties of the first part to this contract, are the owners of the lands hereinabove described, then and in that event the first parties hereto shall acquire no rights whatsoever under or by virtue of this contract, and the same shall become null and void."

Thereafter, and before the final determination of the litigation between Moore and wife and the Spokane Country Club, and while that action was pending, the Great Northern Railway Company brought this action to condemn the lands now sought, which are the same as described in the contract above set out, and at the same time entered into possession of the premises and expended large sums of money in making the connections of the two railroads. Thereafter, on the trial upon the question of public use and necessity, the railway company offered the contract above set out in evidence. This was objected to upon the ground that it was immaterial, and upon the further ground that the lands described in the agreement were not decreed by final judgment of the superior

court of Spokane county to be in James Z. Moore and wife, but that they purchased such lands from the Spokane Country Club pending an appeal to the supreme court from a judgment entered in the superior court in favor of the Spokane Country Club. The trial court sustained these objections and excluded the contract from his consideration, and finally entered an order adjudging the triangular piece necessary for a public use, but refused to so adjudicate the sixty-foot strip necessary therefor.

We think the trial court erred in excluding this contract. The evidence shows without dispute that the irregular tract sought in the action is for a public use, and necessary for the railway company. Moore and wife, however, argue that, under the statute, the railway company is not authorized to take a strip more than two hundred feet in width, while the property sought exceeds that width; and also argue that a strip sixty feet in width for a given road may not be taken by a railway company. If these positions may be maintained under the terms of the statute, which we do not now decide, we are satisfied that, where there has been an agreement that a certain tract or amount of land may be taken, as in this case, the contract will govern, and the same was therefore material in the case as between the railroad company and Moore and wife. The contract was entered into by the parties for a sale of the land for railway purposes. The amount of land and the price were specified, and Moore and wife cannot now be heard to say that the railway company shall take less than was agreed upon. The contract was made in view of the condemnation proceedings being instituted, because it was so recited, and states that such proceeding may be "for the tract of land above described," which is the same land sought. This contract was in the nature of a stipulation in the condemnation proceeding as to the amount of land and necessity therefor, and was binding as such upon the parties to it, and should have been so treated by the trial court.

It is argued that the contract is of no force, because it was not adjudged by the superior court of Spokane county that Moore and wife were the owners of the land. There is no force in this argument, because it was contemplated at the time the contract was entered into that Moore and wife were the owners of the land and would make their title good by the litigation. The fact that the case was compromised and settled by agreement pending the litigation, instead of by an adjudication, was wholly immaterial. The action was pending at the time the contract was entered into, and it was the duty of Moore and wife under the contract to prosecute the action to a final judgment. Instead of so doing, a compromise or settlement was made pending the litigation, which, of course, prevented a final judgment and had the same effect as though a final judgment had been entered in Moore's favor. The clause in the contract providing in case the Spokane Country Club are the owners, means that, if Moore and wife were finally adjudged not to be the owners so that they could not give title, then the contract should be void. A voluntary settlement made pending the litigation became as binding as a final judgment would have been. We are, for these reasons, of the opinion that the trial court should have granted the prayer of the petition against Moore and wife for the condemnation of the tract sought. With this view, it is not necessary to decide other points made in the case.

The judgment is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Rudkin, C. J., Dunbar, Crow, Parker, and Gose, JJ., concur.